BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: FTX Cryptocurrency Exchange Collapse Litigation** | MDL Docket No. 3076 |

*MAGLEBY* AND *BHATIA* PLAINTIFFS' RESPONSE TO MOTION FOR TRANSFER
OF ACTIONS TO THE SOUTHERN DISTRICT OF FLORIDA
PURSUANT TO 28 U.S.C. § 1407

## I.   INTRODUCTION

From its founding in 2019, FTX purported to provide investors a safe way to trade cryptocurrency. FTX customers stored their money and cryptocurrency assets in FTX accounts, and they traded using FTX's proprietary exchange. But FTX was secretly diverting FTX customers funds to Alameda Research ("Alameda"), a hedge fund owned by the same individual who owned FTX: Samuel Bankman-Fried. Alameda dissipated and commingled FTX customer funds with its own to make risky investments, but these investments failed, leaving it unable to repay FTX. On November 11, 2022, FTX and Alameda declared bankruptcy. Investors have lost billions. Senior executives at FTX and Alameda have pleaded guilty to fraud-related criminal charges, and Sam Bankman-Fried is under indictment and awaiting trial.

Class action lawsuits related to FTX have been filed against a wide variety of defendants who allegedly participated in and benefited from FTX's fraudulent scheme. These cases are primarily clustered in two districts: the Northern District of California and the Southern District of Florida. The Panel has previously centralized similar cases involving large-scale financial fraud, such as cases related to the collapse of Lehman Brothers and Enron. Centralization of the FTX cases under § 1407 is appropriate for similar reasons: these cases all involve common questions of fact, including those related to FTX and Alameda's diversion and commingling of

customer funds. Centralization would prevent duplicative discovery into the common issues and avoid conflicting rulings, particularly with regard to class certification, since the classes in the different cases largely overlap. Accordingly, the criteria for centralization are satisfied.

If the Panel chooses to centralize the FTX cases, centralization in the Northern District of California, where most of the cases are already located, would be most convenient for the parties and witnesses. Alameda was founded in the Northern District of California, and many of the defendants are in that district. The judge presiding over the Northern District of California cases, Hon. Jacqueline Scott Corley, is highly qualified to preside over this MDL. Thus, *Magleby* plaintiffs respectfully submit that if the Panel decides that centralization is warranted, the MDL should be assigned to Judge Corley of the Northern District of California.

## II.     BACKGROUND

The cases in this MDL are brought on behalf of plaintiffs who invested money or stored digital assets with FTX, a cryptocurrency exchange founded by Bankman-Fried. FTX promised investors that they could store assets securely as they gained in value, then cash them out or trade them for other assets or financial products. FTX also promised returns on both crypto and traditional investments through its "Yield Bearing Accounts." Secretly, though, FTX diverted customer funds to Alameda, a separate company also owned by Bankman-Fried, which dissipated and commingled the funds with its own. When Alameda's speculative investments failed, FTX and Alameda declared bankruptcy, and FTX customers lost billions.

John J. Ray, who oversaw Enron following its accounting scandal in 2007, became Chief Executive Officer of FTX at the time of the bankruptcy. After reviewing FTX's books and records, Ray declared that "never in my career have I seen such an utter failure of corporate controls at every level of an organization, from the lack of financial statements to a complete failure of any internal controls or governance whatsoever." Three former executives of FTX and

Alameda—Caroline Ellison, Gary Wang, and Nishad Singh—pleaded guilty to criminal charges related to wire, commodities, and securities fraud and entered into consent judgments with the Securities and Exchange Commission and the Commodity Futures Trading Commission. Bankman-Fried was indicted on similar charges and is awaiting trial.

The cases in this MDL are class actions against various defendants alleged to have played a role in the FTX scheme. Plaintiffs in *Magleby* and *Bhatia* allege that Silvergate Bank, which provided banking services to both FTX and Alameda, aided and abetted the fraudulent scheme with knowledge of the fraud.[1] Other plaintiffs assert claims against Silvergate and other banks that allegedly furthered the scheme, former executives of FTX and Alameda who carried out the scheme, the venture capital firms that invested in FTX, the promoters who helped market FTX, the auditors who certified its audit reports, and a law firm that allegedly helped FTX create its corporate structure and execute on its fraudulent scheme.

The cases began to be filed in mid-November 2022, within days of the bankruptcy. The *Garrison* and *Lam* plaintiffs filed the first cases in the Southern District of Florida and Northern District of California, respectively, against executives of FTX and Alameda, as well as promoters. Since then, plaintiffs—mostly in the Northern District of California—have added additional defendants, including the auditor defendants, the bank defendants, the venture capital defendants, and the law firm defendant.

---

[1] Silvergate has announced that it will wind down operations as a result of losses attributable to the decline in crypto asset values and the fallout of the FTX collapse, but has not as of the filing date formally entered receivership. https://ir.silvergate.com/news/news-details/2023/Silvergate-Capital-Corporation-Announces-Intent-to-Wind-Down-Operations-and-Voluntarily-Liquidate-Silvergate-Bank/default.aspx.

**III.     ARGUMENT**

All of the cases in this MDL involve a central set of facts concerning the diversion of funds from FTX customer accounts to Alameda and the loss of those funds. Centralization is appropriate under § 1407 because the cases share common issues of fact, and proceeding in separate districts would risk duplicative discovery and inconsistent rulings. Centralization in the Northern District of California is appropriate because Alameda was founded in that district and many of the defendants are located there. The other principal jurisdiction where FTX cases are located, the Southern District of Florida, is less appropriate because only a subset of one class of defendant—the promoters—are located in the Southern District of Florida, and it does not appear that many of the key witnesses reside in that district. The judge who is already presiding over much of the FTX litigation in the Northern District of California, Judge Jacqueline Scott Corley, is particularly well-qualified to preside over this MDL.

**A.     Centralization is appropriate.**

The Panel may centralize cases that involve common questions of fact. 28 U.S.C. § 1407(a). Centralization is proper when it "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prod. Litig.*, MDL No. 2627, 2015 WL 3654659, at *1 (J.P.M.L. 2015). The convenience requirement is met when transfer and consolidation "will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re Niaspan Antitrust Litig.*, 971 F. Supp. 2d 1346, 1347 (J.P.M.L. 2013); *see also* Manual for Complex Litigation (Fourth), § 20.131 (2004) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce

litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").

To these ends, the Panel has consistently centralized national-scale financial fraud cases like this one. *See, e.g.*, *In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, No. 1446, 2002 WL 32154270, at *1 (J.P.M.L. Apr. 16, 2002); *In re WorldCom, Inc., Sec. & "Erisa" Litig.*, 226 F. Supp. 2d 1352, 1354 (J.P.M.L. 2002). The Panel has cited the fact that "all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses" and thus "[c]entralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary." *Enron*, 2002 WL 32154270, at *1.

Here, too, the FTX cases raise common issues of fact and will involve a number of common events and witnesses. 28 U.S.C. § 1407(a); *see In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) (consolidating because related actions "involve common questions of fact"). Each case relates to the diversion and commingling of funds at FTX and Alameda. For example, the *Magleby* and *Bhatia* cases arise out of Silvergate's decision to accept deposits, process transfers, and engage in other activity while knowing facts that were inconsistent with the representations that FTX made to investors about the handling of FTX customer accounts. The *Magleby* and *Bhatia* plaintiffs allege that Silvergate knowingly and actively aided and abetted FTX's fraudulent scheme. Discovery into these aiding and abetting claims will necessarily involve discovery into the fraudulent scheme. So will discovery into the claims asserted against the accounting firms, promoters, and other defendants who allegedly played a role in the scheme and are defendants in the other cases in the proposed

5

MDL. Common factual issues thus include: the origins and mechanisms for the diversion and commingling; which individuals at FTX and Alameda knew about the diversion and commingling; and with whom they communicated about the diversion and commingling. Each case will require discovery into these issues, risking duplicative discovery if the cases proceed in multiple districts.

Discovery into communications about the diversion and commingling of funds and property will be particularly important here. *Magleby*, *Bhatia*, and several of the other cases in the proposed MDL depend on the defendants' knowledge of the underlying scheme. Precisely what was communicated about the diversion and commingling of funds, when it was communicated, and to whom are likely to be hotly contested issues. Many of the same former employees of FTX and Alameda will be key witnesses to these communications. Centralization will prevent multiple depositions of the same individuals on related topics.

Also, the cases are brought on behalf of overlapping classes, presenting a risk of inconsistent rulings on class certification absent centralization. *See, e.g.*, *Enron*, 2002 WL 32154270, at *1 (centralizing to "prevent inconsistent pretrial rulings (especially with respect to questions of class certification)"). Class certification for each case will depend in part on the common impact that FTX and Alameda's diversion and commingling of funds had on FTX customers, who make up the class members in substantially every case in the proposed MDL. Absent centralization, multiple courts will have to examine overlapping class certification issues.

While the cases involve common questions of fact, not all of the factual issue will be common. The defendants and causes of action overlap but are not identical from case to case. The Panel, however, has frequently centralized major financial fraud cases even when there are some differences among the cases. *See, e.g.*, *WorldCom*, 226 F. Supp. 2d at 1354 ("Whether the actions be brought by securities holders seeking relief under the federal securities laws,

shareholders suing derivatively on behalf of WorldCom, or participants in retirement savings plans suing for violations of ERISA, all . . . actions can be expected to focus on a significant number of common events, defendants, and/or witnesses."); *Enron*, 2002 WL 32154270, at *1 (substantially similar); *In re Glob. Crossing Ltd. Sec. & "ERISA" Litig.*, 223 F. Supp. 2d 1384, 1385 (J.P.M.L. 2002) (substantially similar). The same considerations apply here.

In *Lehman*, the Panel acknowledged that "[s]ome opposing plaintiffs express reservations concerning the management of their actions in this MDL proceeding, because their actions involve different types of Lehman Brothers's securities or legal claims" but nonetheless centralized, observing that the "transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation." 598 F. Supp. 2d at 1364. A common core of financial fraud has led the Panel to centralize cases even when they vary in the details. *In re Equity Funding Corp. of Am. Sec. Litig.*, 375 F. Supp. 1378, 1383 (J.P.M.L. 1973) ("We start with the proposition that the alleged primary or underlying fraud actuates the entire litigation and, to some extent at least, conditions the various plaintiffs' right to recover in all of the actions."); *see also In re: Stanford Entities Sec. Litig.*, 655 F. Supp. 2d 1360, 1361 (J.P.M.L. 2009) ("The parties can present any concerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings to the transferee judge."). Here, there may be more reason to centralize despite differences in defendants and legal theories, because the classes substantially overlap.

If the Panel decides not to centralize, it is not clear that alternatives to centralization will be successful. Coordination across districts is proving difficult in part because the cases and allegations continue to expand. For example, the venture capital defendants and law firm defendant were named in complaints for the first time in February. More cases can be expected. Informal coordination or other alternatives to centralization present challenges when plaintiffs

continue to file new cases invoking different theories that follow new branches off the same conduct.

In addition, this MDL primarily involves cases filed in only two districts, and the Panel has sometimes declined to centralize cases proceeding in too few jurisdictions.[2] *See, e.g., In re U.S. Postal Servs. Next Generation Delivery Vehicle Acquisitions Program Rec. of Decision Litig.*, No. MDL 3046, 2022 WL 5408780, at *2 (J.P.M.L. Oct. 7, 2022) ("Where only a small number of actions and districts are involved, the moving party bears a heavier burden to demonstrate the need for centralization."); *In re Bank of Am. Paycheck Prot. Program Litig.*, 481 F. Supp. 3d 1341, 1342 (J.P.M.L. 2020) (same). But the volume of cases is also significant, and the Panel has centralized cases from two districts in the past "to eliminate duplicative discovery" and "prevent inconsistent rulings," in part because of the "complexity of the allegations and regulatory framework." *In re Xarelto (rivaroxaban) ('310) Pat. Litig.*, 577 F. Supp. 3d 1377, 1378 (J.P.M.L. 2021); *see also In re Clearview AI, Inc., Consumer Priv. Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (centralizing cases from two districts to prevent "duplicative discovery" and "inconsistent pretrial rulings, including with respect to class certification"). Similar considerations apply here.

      **B.**      **The Northern District of California is an appropriate transferee court.**

The Northern District of California, where most of the FTX cases are located, is a suitable MDL venue. Many of the defendants are located in this district or have connections to it. Alameda was founded in Berkeley, California; it is named for the county in which Berkeley is located. FTX and Alameda later moved their global headquarters internationally, first to Hong Kong, then to the Bahamas. As a result, the Northern District of California is the only district in

---

[2] Cases in three districts were listed in the petition's original schedule of actions, but the cases in the Southern District of California have since been dismissed.

the United States where key corporate decisionmakers—Bankman-Fried, Ellison, and others—resided and had their offices at relevant times. Many of the other defendants in the MDL are located in the Northern District of California as well, including promoter the Golden State Warriors, several venture capital firms (including Sequoia, Paradigm, Softbank, and Ribbit), auditor Armanino, and law firm Fenwick & West. Bank defendant Silvergate also is nearby in Southern California. The Northern District of California is easily accessible for all parties, a factor that the Panel has given weight in choosing a transferee forum. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 483 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007).

The other district with a significant number of FTX cases is the Southern District of Florida, but it has less connection to the case. The current U.S. headquarters of FTX is in Miami, but according to news reports, FTX moved its U.S. headquarters to Miami only in September 2022,[3] less than two months before the bankruptcy. None of the pertinent executives who oversaw the fraud, such as Bankman-Fried, were ever based in Miami. Some of the promoter defendants, such as Tom Brady and the Miami Heat, are in the Southern District of Florida, but the auditor defendants, venture capital defendants, bank defendants, and law firm defendant, as well as several other promoter defendants, are located elsewhere, mostly in California. California has the strongest connection to this litigation.

C. **Judge Corley is well qualified to preside over this MDL.**

The FTX-related cases in the Northern District of California are before the Honorable Jacqueline Scott Corley. If the Panel transfers the cases to the Northern District of California, Judge Corley is well qualified to preside over the MDL.

---

[3] https://www.coindesk.com/business/2022/09/27/crypto-exchange-ftx-is-moving-its-us-headquarters-from-chicago-to-miami/

Judge Corley served as a career clerk for Hon. Charles R. Breyer in the Northern District of California and then as a Magistrate Judge—each for over a decade—before receiving her commission as a District Judge on March 30, 2022.[4] As a Magistrate Judge, she served, for instance, as discovery referee for the *Juul* e-cigarette MDL. *See In re Juul Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*, No. 19-md-0291 (N.D. Cal.). Due in significant part to the court's diligence, the *Juul* MDL has moved expeditiously forward, with core settlements already secured—resolving a complex set of personal injury, class economic loss, government entity, and Native American tribal claims in less than three and a half years—and a major trial scheduled for April 2023.

As Magistrate Judge, Judge Corley also served as discovery referee for several other complex cases, including San Francisco's opioids litigation. *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, No. 18-CV-07591 (N.D. Cal.). Judge Corley's extensive experience with multidistrict and complex litigation demonstrates that she is exceptionally qualified to preside over this litigation.

## IV.     CONCLUSION

The *Magleby* plaintiffs respectfully request that the Panel centralize the cases in the Northern District of California before the Honorable Jacqueline Scott Corley.

Respectfully submitted,

Dated: March 10, 2023                    By    /s/ *Adam E. Polk*

Daniel C. Girard (SBN 114826)
Adam E. Polk (SBN 237000)
Tom Watts (SBN 308853)
Makenna Cox (SBN 326068)
**GIRARD SHARP LLP**

---

[4] https://www.cand.uscourts.gov/judges/corley-jacqueline-scott-jsc/.

601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
apolk@girardsharp.com
tomw@girardsharp.com
mcox@girardsharp.com

*Attorneys for Magelby Plaintiffs*


By      /s/ *Jason Kellogg*

Jason Kellogg (Fla. Bar No. 0578401)
Victoria J. Wilson (Fla. Bar No. 92157)
Marcelo Diaz-Cortes (Fla. Bar No. 118166)
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
100 Southeast Second Avenue
36th Floor
Miami, Florida  33131
Tel: (305) 803-87888
jk@lklsg.com
vjw@lklsg.com
md@lklsg.com

*Attorneys for Plaintiff Bhatia*

11